**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BASHIR SHAMSUDDI** | **CIVIL ACTION** |
| **v.** | **NO. 19-3261** |
| **CLASSIC STAFFING SERVICES** | |

**MEMORANDUM**

Baylson, J.                                                                         December 28, 2020

  In this employment case, Plaintiff Bashir Shamsuddi contends that Defendant Classic Staffing Services ("Classic Staffing") created a hostile work environment, discriminated against him based on his race, and constructively discharged him from his position. This memo discusses Defendant's Motion for Summary Judgment. The basis for the complaint is a voicemail left for Plaintiff by an employee of Defendant referring to Plaintiff with racially discriminatory terms.

**I.  Factual Background and Procedural History**

  Plaintiff Bashir Shamsuddi is an African-American man. (ECF 21, Defendant's Statement of Undisputed Material Facts, "Def. SUMF" ¶ 1.) Defendant Classic Staffing is a temporary employee staffing agency. (Def. SUMF ¶ 2.) Plaintiff began working with Classic Staffing in October 2014 when he accepted his first job placement. (Def. SUMF ¶ 10.) Classic Staffing states that Plaintiff was only its employee while actively working for one of their clients. (Def. SUMF ¶ 9.) Plaintiff disputes this fact, stating that "[t]he record contains no new hire documentation or no notification or documentation reflecting that Plaintiff was terminated at the end of each placement." (ECF 24, Plaintiff's Response to Defendant's Statement of Undisputed Facts, "Pl. Resp." ¶ 9.) Over time Plaintiff worked at several job sites to which he was assigned by Classic Staffing. (Def. SUMF ¶¶ 10, 12, 14, 17, 20.)

Classic Staffing admits that its "clients ultimately determine which job seekers are fired or hired." (Def. SUMF ¶ 8.) However, they retain control over offering employees the opportunity to work at a new job site. (ECF 24, Plaintiff's Supplemental Statement of Facts, "Pl. SSF" ¶ 1.) If an employee walks off an assignment with a client, he or she can contact Classic Staffing to be assigned again. (Pl. SSF ¶ 20.) At the relevant time, in 2016, Michelle Kalapos was the only recruiter at Classic Staffing and in this capacity she was responsible for deciding whether to continue assigning jobs to Plaintiff. (Pl. SSF ¶¶ 1, 2.)

Classic Staffing's employment application states "I completely understand that whenever I cannot make it to work, I will call both my actual job site and Classic Temps to inform them." (Def. SUMF ¶ 3.) However, Plaintiff states that this policy "was never enforced and that he was told that he only needed to alert his supervisor." (Pl. SSF ¶¶ 5–8.) Occasionally, Plaintiff called out from work and always did so by contacting the job site to which he was assigned, not Defendant. (Pl. SSF ¶ 5.) Classic Staffing never indicated to Plaintiff that calling out from work in this manner was an issue. (Pl. SSF ¶ 6.) In 2016, Classic Staffing did not have an employee handbook, or a policy prohibiting workplace harassment or detailing a procedure for reporting harassment. (Pl.'s SSF ¶¶ 22, 23.)

Plaintiff was assigned to and began working at Isabelle's Kitchen in May 2016. (Def. SUMF ¶ 20.) In late May, Plaintiff called Isabelle's Kitchen to inform them he would not be able to come to work because he was moving. (Pl. SSF ¶ 9.) Defendant states that Plaintiff voluntarily terminated his employment when he failed to show up for work four days in a row. (Def. SUMF ¶ 21.) Plaintiff disputes this, stating that he informed Isabelle's Kitchen that he was moving and that he believed he was remained employed by Isabelle's Kitchen. (Pl. SSF ¶¶ 9–10.) On the same day or the day after he called out from work, Kalapos called Plaintiff to find out why he was

not at work, and when he did not answer she left a message.  (Pl. SSF ¶¶ 11, 16, 17.)  After leaving

her intended message, Kalapos did not hang up the phone and additional statements were recorded

on Plaintiff's voicemail which form the basis for this lawsuit.  (Pl. SSF ¶ 17.)  The voicemail

message in its entirety is as follows:

> Michelle from Classic Staffing for Bashir Shamsuddi. Bashir, I understand from Isabelle that you stopped going in and you did not call and tell me at all and I'm just wondering what is going on. 215 538 1198. Thanks Bashir. Bubeye.
>
> . . . Jackass . . . So Bashir Shamsudid, yeah remember he call and said oh you know what? Oh my god! You know what that nigger did? He wanted his brother to work there. And I said your brother has to come here and fill out an application. And he said don't worry about it. And how much do you want to bet that he had his brother take his job instead of him. Cause he said 'oh my brother needs this job really bad he needs it way more than me.' I bet you that's what they did and his brother is just going right through Isabelle. Niggers. If he calls I want to talk to him. Jig. Jiggy-poo. Jig jog jiggers. Well I know. He gets all mad at Bob because he's 15 minutes late with the checks. How about we just make their pay day Friday. Friday morning huh? Can you believe tomorrow is June 1st, Kathy? 2016 is halfway over. Unbelievable. Are you on the phone?

Id.

Plaintiff testified that he viewed this voicemail as a "slap in the face" and a "knee on his

neck." (Pl. SSF ¶ 31.)  Kalapos admitted that the voicemail was racist and that it was reasonable

for a black employee to no longer want to work for Classic Staffing after hearing the voicemail.

(Pl. SSF ¶¶ 28, 30.)

In November 2016, Plaintiff filed a timely charge with the United States Equal

Employment Opportunity Commission (EEOC) and the Pennsylvania Human Relations

Commission (PHRC).  (Am. Compl. ¶¶ 14, 15.)  The EEOC issued Plaintiff a Notice of Rights on

April 25, 2019.  (Am. Compl. ¶ 16.)  Plaintiff filed his initial complaint against Defendant on July

25, 2019. (ECF 1.)  Plaintiff's Amended Complaint alleges seven counts against Classic Staffing:

1. **Count I**: Race Discrimination and Disparate Treatment in violation of Title VII of the Civil Rights Act of 1964;

2. **Count II**: Race Discrimination and Disparate Treatment in violation of the Pennsylvania Human Relations Act ("PHRA");

3. **Count III**: Race Discrimination and Maintenance of a Hostile Work Environment in violation of Title VII;

4. **Count IV**: Race Discrimination and Maintenance of a Hostile Work Environment in violation of the PHRA;

5. **Count V**: Race Discrimination and Constructive Discharge in violation of Title VII;

6. **Count VI**: Race Discrimination and Constructive Discharge in violation of the PHRA; and

7. **Count VII**: Maintenance of a Racially Hostile Work Environment in violation of 42 U.S.C. § 1981.

Following discovery, Defendant moved for summary judgment on September 15, 2020 (ECF 21, Defendant's Motion for Summary Judgment, "Def. MSJ"), and Plaintiff responded on October 29, 2020 (ECF 24, Opp'n). Defendant did not file a reply brief.

## II.    Legal Standard

Summary judgment is proper if the movant can establish "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine—and will preclude a grant of summary judgment—if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If a fact "might affect the outcome of the suit under the governing law," the factual dispute is material and will allow the nonmovant to survive summary judgment. Id. Only if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party" is a grant of summary judgment appropriate. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). At the summary judgment stage, the

district court is obligated to "review the record as a whole and in the light most favorable to the nonmovant, drawing reasonable inferences in its favor." In re Chocolate Confectionary Antitrust Litig., 801 F.3d 383, 396 (3d Cir. 2015).

It is the responsibility of the litigant seeking summary judgment to inform the district court of the basis for its motion and identify the portions of the record that demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the burden of proof on a particular issue rests with the nonmoving party at trial, the moving party's initial burden can be met by simply pointing out to the district court "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has met its initial burden, the nonmoving party must set forth specific facts—through citation to affidavits, depositions, discovery documents, or other evidence—demonstrating the existence of a genuine triable dispute. Fed. R. Civ. P. 56(c).

## III.  Discussion

"The proper analysis under Title VII and the Pennsylvania Human Relations Act is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably." Weston v. Pennsylvania, 251 F.3d 420, 425 n.3 (3d Cir. 2001). For this reason, this memo considers together each of Plaintiff's claims under Title VII and the PHRA based on the same theory.

### a.  Constructive Discharge

"Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes." Pa. State Police v. Suders, 542 U.S. 129, 141 (2004). Courts apply an objective test and ask: "Did working conditions become so intolerable that a reasonable person in the employee's

position would have felt compelled to resign?" Id. "[A] reasonable employee will usually explore such alternative avenues thoroughly before coming to the conclusion that resignation is the only option." Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1161 (3d Cir. 1993).[1] However, it is not "require[d] that such steps be taken in all cases. An employee may be able to show working conditions were so intolerable that a reasonable employee would feel forced to resign without remaining on the job for the period necessary to take those steps." Id. at 1161 n. 6.

The Third Circuit has recognized, that it "cannot state as a broad proposition of law that a single non-trivial incident of discrimination can never be egregious enough to compel a reasonable person to resign." Levendos v. Stern Entertainment, Inc., 860 F.2d 1227, 1232 (3d Cir. 1988). However, a plaintiff may "face a more difficult burden of proof in establishing the employer's liability, when relying on a single discriminatory incident as a basis for arguing the occurrence of constructive discharge. Id.

In Nuness v. Simon & Schuster, Inc., the plaintiff brought a lawsuit against her employer after one of her co-workers called her a "nigglet" (combining the "n-word" and piglet). 325 F. Supp. 3d 535, 541 (D.N.J. 2018). The court noted that the co-worker's comment was "particularly vicious, disgusting, and offensive." Id. at 557. The court also relied on the employer's failure to adopt a solution proposed by the plaintiff, specifically that either she or the co-worker be moved to a different shift so that they would not have to interact. Id. at 560–61. The court stated that while the plaintiff and the co-worker "did not regularly work closely together, they were exposed to each other in common areas on a daily basis and frequently (albeit not regularly) worked together on the floor." Id. Because the employer did not look into the plaintiff's proposed solution,

---

[1] While this is an Age Discrimination in Employment Act case, "the doctrine of constructive discharge is the same in all employee discrimination claims." Gray v. York Newspapers, Inc., 957 F.2d 1070, 1079 n.5 (3d Cir. 1992).

the court found that she had "raised a genuine dispute of material fact as to whether [the d]efendant was adequately responsive in addressing her complaints." Id. at 557-58.

Plaintiff argues that Kalapos' recognition that a black employee would not want to work for Classic Staffing after hearing her voicemail is sufficient evidence for a jury to find that Plaintiff was constructively discharged. Further, Plaintiff argues that the seriousness of the conduct here in combination with the inability of Defendant to rectify this situation warrants a finding of constructive discharge. Defendant largely relies on its arguments regarding Plaintiff's hostile work environment claim, and argues that because a constructive discharge claim requires more than a hostile work environment claim, Plaintiff's argument fails.

Here, Kalapos used a particularly offensive slur to describe Plaintiff multiple times in her voicemail. Plaintiff explained that these comments were incredibly hurtful and Kalapos admitted that she could understand why a black person would not want to work for Classic Staffing after hearing them. It's also relevant here that within the structure of Classic Staffing, there was no way for Plaintiff to continue his employment and not interact with Kalapos because she was the only recruiter and was solely responsible for assigning jobs to employees. Further, at the relevant time, Classic Staffing did not have an anti-harassment policy, an employee handbook, or procedure for reporting racial discrimination. Therefore, even if Plaintiff had wanted to suggest some alternative solution, there was not a clear means for doing so. These circumstances, in combination with the serious and offensive nature of the n-word would allow a reasonable jury to find that the working conditions at Classic Staffing "become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." Suders, 542 U.S. at 141.

### b.  Disparate Treatment

"A Title VII plaintiff may make a claim for discrimination under either the pretext theory set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), or the mixed-motive theory set forth in <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989), under which a plaintiff may show that an employment decision was made based on both legitimate and illegitimate reasons." <u>Connelly v. Lane Constr. Corp.</u>, 809 F.3d 780, 787 (3d Cir. 2016) (quotation omitted).

Defendant contends that Plaintiff has put forth a pretext argument, and that this argument should fail on summary judgment.  Plaintiff primarily argues that they have made out a mixed-motive case of disparate treatment, but in the alternative that he should be allowed to move forward on a pretext claim as well.

### i.  Mixed Motive

In a mixed-motive case under Title VII and the PHRA, the plaintiff must demonstrate, using either direct or circumstantial evidence, that race was a motivating factor in the defendant's employment decision.  <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90, 99–101 (2003); <u>Makky v. Chertoff</u>, 541 F.3d 205, 214 (3d Cir. 2008).  The Third Circuit has defined this as "evidence sufficient to allow the jury to find that the decision makers placed substantial negative reliance on the plaintiff's race" in making the adverse employment decision.  <u>Brown v. J. Kaz, Inc.</u>, 581 F.3d 175, 183 (3d Cir. 2009).

Once the plaintiff demonstrates that race was a motivating factor in the employment action, the burden shifts to the defendant to show that it "would have taken the same action in the absence of the impermissible motivating factor."  42 U.S.C. § 2000e-5(g)(2)(B); <u>see also</u> <u>Watson v. SEPTA</u>, 207 F.3d 207, 218 (3d Cir. 2000).  This "limited affirmative defense . . . does not absolve [the defendant] of liability, but restricts the remedies available to a plaintiff" to declaratory relief,

injunctive relief, and attorney's fees and costs.  Desert Palace, 539 U.S. at 94; see also 42 U.S.C. § 2000e-5(g)(2)(B)(i)–(ii).

Much of Plaintiff's argument with respect to a mixed motive theory of discrimination is reliant on a finding of constructive discharge because there is no claim for disparate treatment without an adverse employment action.  Based on the above discussion regarding constructive discharge, there is also a genuine dispute of material fact regarding Plaintiff's claim for mixed motive disparate treatment.  Kalapos' comments display clear evidence of racially discriminatory bias.

### ii. Pretext

McDonnell Douglas, laid out a three-step burden-shifting framework.  First, a plaintiff must establish a prima facie case of unlawful discrimination.  McDonnell Douglas, 411 U.S. at 802.  "[T]he prima facie test remains flexible and must be tailored to fit the specific context in which it is applied."  Sarullo v. United States Postal Serv., 352 F.3d 789, 797–98 (3d Cir. 2003).  Defendant cites Sarullo for the elements of a prima facie case, which states the test as follows: "(1) the plaintiff belongs to a protected class; (2) he/she was qualified for the position; (3) he/she was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position."  Id. at 797.  Plaintiff cites Jones v. School Dist., which states a similar test but describes the fourth element as "under circumstances that give rise to an inference of unlawful discrimination such as might occur when the position is filled by a person not of the protected class."  198 F.3d 403, 410–411 (3d Cir. 1999).

If the plaintiff is successful in demonstrating a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the treatment.  McDonnell

<u>Douglas</u>, 411 U.S. at 802–03.  Lastly, if the defendant successfully puts forth such a reason, the burden shifts back to the plaintiff to prove that the defendant's explanation is merely a pretext for the employment discrimination.  <u>Id.</u> at 804–05.

Defendant acknowledges that Plaintiff is a member of a protected class, but argues that he has not met the second, third, or fourth prongs of a prima facie case of disparate treatment.  First, Defendant argues it is undisputed that Plaintiff was not qualified for his position because "he routinely failed to perform his job duties by not showing up for work."  (Def. MSJ 5.)  Defendant also argues that Plaintiff voluntarily ended his employment so cannot demonstrate an adverse employment action.  Lastly, Defendant argues Plaintiff cannot show that individuals who are not members of a protected class were treated better than he was.

To begin, the analysis above finds that Plaintiff has at least raised a genuine issue of material fact regarding an adverse employment action with respect to his claim that he was constructively discharged.  Next, Plaintiff has raised a genuine dispute of material fact regarding his qualifications for his position.  He states that he called out of work at Isabelle's Kitchen using the same procedure he had used in the past without complaint, and did not fail to show up without first notifying his job site.  He has also explained that he believed he was still employed at the time that he received Kalapos' voicemail.  Thus, there are disputed facts regarding whether Plaintiff failed to abide by the terms of his employment.  Further, Kalapos indicated that Plaintiff could have contacted her to be assigned to a new job site even after leaving Isabelle's Kitchen, also indicating that Plaintiff was qualified for his position.

With respect to the fourth prong, the characterization of this part of the test from <u>Jones</u> is more relevant, as that case also concerned a constructive discharge.  Plaintiff has established a prima facie case that his constructive discharged occurred "under circumstances that give rise to

an inference of unlawful discrimination such as might occur when the position is filled by a person not of the protected class." <u>Jones</u>, 198 F.3d at 410–411.  Assuming Plaintiff was constructively discharged, that only occurred because of his race, and would not have occurred had someone of another race filled the position.

### c.   Hostile Work Environment

In order to demonstrate a prima facie case of a hostile work environment, a plaintiff must show that "1) the employee suffered intentional discrimination because of his/her race, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability meaning the employer is responsible." <u>Castleberry v. STI Grp.</u>, 863 F.3d 259, 263 (3d Cir. 2017).[2]  Factors to consider "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 23 (1993).

In <u>Castleberry</u>, the Third Circuit clarified that the second factor is "severe <u>or</u> pervasive" conduct.  863 F.3d at 264 (emphasis in original).  The Court noted that "severity and pervasiveness are alternative possibilities: some harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable, conduct will contaminate the workplace only if it is pervasive." <u>Id.</u> (quotation omitted).

With respect to the fifth factor, "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate

---

[2] <u>Castleberry</u> considered a hostile work environment claim under 42 U.S.C. § 1981 but "[i]n employment discrimination cases, these claims are subject to the same analysis as discrimination claims under Title VII of the Civil Rights Act of 1964."  863 F.3d at 263.

(or successively higher) authority over the employee." Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998). "When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages" which is no commonly known as the Faragher-Ellerth defense. Id. The employer must show that they "exercised reasonable care to avoid harassment and to eliminate it when it might occur, and that the complaining employee had failed to act with like reasonable care to take advantage of the employer's safeguards and otherwise to prevent harm that could have been avoided." Id. at 805. "While proof that an employer had promulgated an anti-harassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense." Burlington Indus. v. Ellerth, 524 U.S. 742, 765 (1998).

Defendant contends that Plaintiff cannot meet the second and fifth prongs of the hostile work environment test, arguing that the conduct here was not sufficiently serious and that Plaintiff cannot prove respondeat superior liability.

Plaintiff has established severe or pervasive conduct. To begin, if the Court finds that Plaintiff may move forward with his constructive discharge claim, it must also find that the conduct is sufficiently severe to constitute a hostile work environment. See Suders, 542 U.S. at 147 (stating that a "constructive discharge claim entails something more than a hostile work environment claim"). In addition, when considering whether a single use of the "n-word" could be sufficiently severe for purposes of establishing a hostile work environment claim, the Third Circuit has stated that "[a]lthough the resolution of that question is context-specific, it is clear that one such instance can suffice to state a claim." Castleberry, 863 F.3d at 264; see also Williams v. City of Philadelphia

Office of Fleet Mgmt., No. 18-3875, 2020 WL 1677667, at *4 (E.D. Pa. Apr. 6, 2020) (Pratter, J.) ("a single use of the 'n-word' may be enough to establish a hostile work environment").

Defendant's argument that Plaintiff cannot establish respondeat superior liability is also unavailing.  While implicitly acknowledging that Kalapos is Plaintiff's supervisor, Defendant argues that she did not take a tangible employment action against Plaintiff and that Plaintiff never reported any instances of discrimination.  First, a constructive discharge qualifies as a tangible employment action "when a supervisor's official act precipitates the constructive discharge." Suders, 542 U.S. at 140–41.  Based on the above discussion of constructive discharge, Plaintiff has raised an issue of material fact with respect to whether there was a tangible employment action by Kalapos.  Further, even if Defendant were able to assert the Faragher-Ellerth defense, it would fail.  There is no evidence in the record to support a finding with respect to the first prong of the defense, that Defendant "exercised reasonable care to avoid harassment and to eliminate it when it might occur."  Faragher, 524 U.S. at 807.  There is no evidence that Defendant had any anti-harassment or anti-discrimination policy in place, or any specific mechanism for employees to report instances of harassment or discrimination.  Kalapos testified that she never received training regarding discrimination or harassment in the workplace.

Plaintiff has raised a claim of hostile work environment under 42 U.S.C. § 1981 in addition to Title VII and the PHRA, however there is no mention of 1981 in Defendant's Motion for Summary Judgment.  It seems reasonable to assume that Defendant omitted this claim in error, but that because the same standard applies, summary judgment should be denied with respect to this claim as well.

O:\CIVIL 19\19-3261 Shamsuddi v Classic Staffing\19cv3261 memorandum 12282020.docx